IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MICHELE DENNIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| LINK MEDIA SERVICES, LLC d/b/a ) | |
| LINK MEDIA OUTDOOR, ) | |
| Serve: CT Corporation System ) | |
|      Registered Agent ) | |
|      120 S. Central Ave. ) | |
|      Clayton, MO 63105 ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff Michele Dennis, ("Dennis" or "Plaintiff"), for her complaint against Defendant Link Media Services, LLC d/b/a Link Media Outdoor ("Defendant" or "Link"), alleges the following:

## PARTIES

1. Dennis is a citizen of the United States and a resident of Knox County, Illinois.

2. Defendant Link Media Services, LLC is a Delarare limited liability company that does business in the State of Missouri as Link Media Outdoor.

## NATURE OF ACTION

3. This action seeks redress for disability or perceived disability discrimination under the Americans with Disabilities Act, 42 U.S.C. §§12101, *et seq.* ("ADA").

## JURISDICTIONAL BASIS

4. This court has primary jurisdiction over Plaintiff's ADA claims pursuant to 28 U.S.C. § 1331.

1

5. The acts complained of in this Complaint took place in the Western District of Missouri, and so, venue is proper in this District pursuant to 28 U.S.C. § 1391.

## ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

6. Dennis incorporates by reference the above paragraphs as though set forth separately herein.

7. Dennis filed a Charge of Discrimination (No. 563-2020-02405) with the U.S. Equal Employment Opportunity Commission ("EEOC") for disability and age discrimination and retaliation on July 10, 2020. Dennis was issued a notice of her right to sue for this Charge on June 11, 2021. This complaint has been filed within 90 days of receipt of each.

8. Dennis has met all administrative prerequisites prior to filing this action.

## FACTS COMMON TO ALL COUNTS

9. Dennis began working for Link in January 2019 as a real estate manager.

10. In 2016, Dennis was diagnosed with multiple sclerosis ("MS"), and Link was aware of her diagnosis when it hired her in 2019.

11. On or about October 1, 2019, Dennis had an MS flare-up and became very ill.

12. On October 2, 2019, Dennis informed Liz Rowland and Dan Prendiville via email that her physician had ordered her to not work until a neurologist could see her. Dennis also inquired as to whether she would be accommodated for this leave. For instance, being allowed to fill in a couple of days with her floating holidays or vacation time.

13. In its employee handbook, Link has a "Disability Accommodation" policy that reads as follows:

### 3.2 Disability Accommodation

The Company complies with federal and state disability regulations, including the Americans with Disabilities Act (ADA). Qualified applicants or employees who inform the Company of a physical or mental disability requiring accommodation in order for them to perform the essential functions of their jobs should inform their supervisor of this so that we can together discuss what accommodations are available and appropriate.

Procedure for reasonable accommodation requests:

- Employee advises Human Resources or their supervisor of the need for accommodation. Employee completes a Request for Accommodation form and gives it to his or her supervisor.
- The accommodation request will be discussed with the employee and the employee's manager(s).
- The employee may be required to provide documentation supporting a disability, including medical certification.
- If a reasonable appropriate accommodation is readily available, the request will be approved and the accommodation implemented.
- If an accommodation is not readily ascertainable, the matter will be pursued further with assistance from appropriate external resources.

The Company will consider the request but reserves the right to offer its own accommodation to the extent permitted by law. Some, but not all, of the factors that the Company will consider are cost, the effect that an accommodation will have on current established policies, and the burden on operations — including other employees — when determining a reasonable accommodation.

14. On October 3, 2019, Ms. Rowland responded to Dennis, asking whether she could see a neurologist, asking how long she would be out, and indicating that she would need to provide a doctor's note for her file.

15. This was the only discussion Link or its representatives had with Dennis about her request to be off until she could be seen by her neurologist.

16. Dennis never received or was asked to fill out a request for accommodations form as contemplated in the policy above.

17. On October 8, 2019, at 10:50 a.m., Dennis informed Liz Rowland and Dan Prendiville via email that she had requested to be put on the doctor's cancellation list, but the earliest she would be able to be scheduled to be seen by a neurologist would be October 31, 2019.

18. The same day, approximately two hours later, Dennis received the following email, informing her that, because of medical issues, she was being terminated effective immediately.

**From:** Liz Rowland
**Sent:** Tuesday, October 8, 2019 12:51 PM
**To:** Michele Dennis <mdennis@linkmediaoutdoor.com>
**Cc:** Dan Prendiville <dprendiville@linkmediaoutdoor.com>
**Subject:** RE: Doctor

Hi Michele,

We are very sorry to hear about your medical issues and the pain you are experiencing. We hope you are able to find relief with your doctor's help very soon. While we are very sympathetic, we are also in a tough place with regards to your position that has been without attending for a week and we are now finding out that you won't be able to see the neurologist until the 31st with prognosis and likelihood for returning to work unknown. Being a small billboard company we do not have the coverage to keep your position open for you indefinitely. Unfortunately this leaves us with no choice. We must terminate your employment as of today. I will be sure to apply any unused vacation, sick or holiday pay to your final check on the 15th. Please make arrangements to return your laptop, keys, and any other company property as soon as you are able.

Rest up and take care. I am here if you have any questions going forward.

**Elizabeth C. Rowland**
Human Resources Director

19. During her tenure with Link, Dennis never received any coaching, counseling, or verbal or written reprimands.

20. By all accounts, Dennis was a hardworking and well-liked employee.

21. In sum, Dennis requested an accomodation for a medical issue known by Link, and instead of accomodating her, or engaging in the interactive process, Link termined Dennis because

4

Case 4:21-cv-00508-HFS   Document 1   Filed 07/19/21   Page 4 of 6

it found out that she would not be "able to see the neurologust until the 31st with the prognosis and likelhood for returning to work unknown".

22. Accordingly, it is reasonable to conclude that Link discriminated against Dennis because of her disability, perceived disability, or a record of disability, and further, that Link did not accommodate her reasonable request for leave or engage in the interactive process.

## COUNT I

### Violation of the Americans with Disabilities Act, 42 U.S.C. Ch. 126 §12101, *et seq*.

23. Dennis realleges and incorporates all preceding paragraphs.

24. Link was an employer for the purposes of the ADA.

25. Dennis was an employee of Link for the purposes of the ADA.

26. Dennis was disabled for the purposes of the ADA.

27. Dennis had a record of being disabled for the purposes of the ADA.

28. Link regarded Dennis as being disabled for the purposes of the ADA.

29. Link terminated Dennis because she was disabled, had a record of being disabled, or because it regarded her as disabled.

30. The adverse employment actions alleged above directly and proximately caused Dennis to suffer damages, including lost wages, lost benefits, garden variety emotional distress, humiliation, intimidation, embarrassment, and frustration.

31. The persons who terminated Dennis were agents of Link who were acting in the course and scope of their agency with Link and/or acting with express authority from Link.

32. Link, through its agents or employees, acted outrageously by engaging in discriminatory practices with malice or reckless indifference to Dennis' federally protected rights.

33. Defendant is therefore liable for punitive damages in an amount sufficient to punish Link and to deter it and other employers from engaging in similar conduct.

WHEREFORE, Plaintiff Michelle Dennis prays for judgment against Defendant Link Media Services, LLC for a finding that she has been subjected to unlawful discrimination in violation of 42 U.S.C. §12101, *et seq*.; for lost wages, benefits, compensatory and punitive damages; equitable relief; costs expended; reasonable attorneys' fees provided by 42 U.S.C §2000e-5(k); and for such other and further relief the court deems just and proper.

## DEMAND FOR JURY TRIAL

Dennis hereby demands a trial by jury for the foregoing causes of action.

## DESIGNATION OF PLACE OF TRIAL

Dennis respectfully requests that trial be held in Kansas City, Missouri.

## CIVIL COVER SHEET

Attached as **Exhibit A** is the Civil Cover Sheet.

HKM EMPLOYMENT ATTORNEYS LLP

/s/ *John J. Ziegelmeyer III*
John J. Ziegelmeyer III   MO No. 59042
Brad K. Thoenen   MO No. 59778
1501 Westport Road
Kansas City, Missouri 64111
Tel: 816.875.3332
jziegelmeyer@hkm.com
bthoenen@hkm.com
www.hkm.com

ATTORNEYS FOR PLAINTIFF

6